UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASIE LANEE WHITE,

       Petitioner,

v.                                Case No. 3:19-cv-1297-MMH-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

_____

## ORDER

### I. Status

       Petitioner Casie Lanee White, an inmate of the Florida penal system, initiated this action on October 11, 2019, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[1] In the Petition, White challenges a 2015 state court (Duval County, Florida) judgment of conviction for second-degree murder. She raises eleven grounds for relief. See Petition at 5-14. Respondents submitted a memorandum in opposition to the Petition. See Response (Doc. 5). They also submitted exhibits. See Docs. 6-1 through 6-5. White filed a brief in reply. See Reply (Doc. 8). This action is ripe for review.

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

## II. Relevant Procedural History

On March 5, 2014, the State of Florida charged White by information with second-degree murder (count one). Doc. 6-1 at 42. On February 12, 2015, at the conclusion of a trial, the jury found White guilty of count one with the special finding that she carried, displayed, used, threatened to use, or attempted to use a weapon during the commission of the offense. Id. at 121-22. On March 20, 2015, the trial court sentenced White to a term of life in prison. Id. at 132-37.

On direct appeal, White, with the benefit of counsel, filed an initial brief, arguing the trial court erred when it denied White's request for a special jury instruction, and the trial court abused its discretion when it denied White's motion for a continuance. Doc. 6-4 at 271-304. The State filed an answer brief. Id. at 306-40. White filed a reply brief. Id. at 342-57. The First DCA per curiam affirmed White's conviction and sentence without a written opinion on January 5, 2017, id. at 359, and issued the mandate on January 23, 2017, id. at 361.

On March 29, 2018, White filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Id. at 380-405. In her Rule 3.850 Motion, White alleged counsel was ineffective when he failed to:

2

present "a reasonable hypothesis of innocence" (ground one); move for immunity based on Stand Your Ground[2] (ground two); present exculpatory DNA evidence and suppress the murder weapon (ground three); subpoena DNA tests of White's clothes and the victim's fingernail clippings (ground four); retain a mental health expert to evaluate White (ground five); "aggressively" cross-examine State witness Andre Davis (ground six); investigate and present a viable defense of innocence (ground seven); and have White testify at trial (ground eight). Id. at 380-400. White also alleged the trial court abused its discretion when it denied her motion for a continuance (ground nine), and the cumulative effect of counsel's errors resulted in an unfair trial (ground ten). Id. at 400-04. On May 27, 2018, the postconviction court summarily denied relief on all grounds. Id. at 406-09; Doc. 6-5 at 1-12. The First DCA per curiam affirmed the denial of relief without a written opinion on September 9, 2019, id. at 249, and issued the mandate on October 7, 2019, id. at 252.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

---

[2] Fla. Stat. § 776.032.

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [White's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v.

4

Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id.

6

at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential

review under § 2254(d) generally is limited to the record that was before the

state court that adjudicated the claim on the merits. See Cullen v. Pinholster,

7

563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

8

To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052.  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of

any iron-clad rule requiring a court to tackle one prong of the Strickland test

before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part

Strickland test must be satisfied to show a Sixth Amendment violation, "a

court need not address the performance prong if the petitioner cannot meet

the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d

1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds

10

another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One[3]

As Ground One, White alleges that the trial court erred when it denied her request for a special jury instruction defining the term "weapon" as an instrument of attack or defense in combat or a means used to defend against or defeat another. Petition at 5. White raised a substantially similar claim on direct appeal, Doc. 6-4 at 287-90; the State filed an answer brief, id. at 312-18; and the First DCA per curiam affirmed White's conviction without a written opinion, id. at 359.

Respondents argue that White failed to properly exhaust her claim because she did not articulate a federal constitutional basis for the claim in

---

[3] White does not provide specific facts to support the various grounds for relief raised in her Petition, and she does not adopt the corresponding grounds asserted on direct appeal or in her Rule 3.850 Motion. See generally Petition. Nevertheless, the Court will consider the claims as set forth in the corresponding grounds on direct appeal or in her Rule 3.850 Motion.

her initial brief. Response at 8. According to Respondents, because White cannot return to state court to properly exhaust the claim, it is procedurally defaulted. <u>Id.</u> Upon review of the record, the Court concludes that White has not exhausted this claim, and that it is procedurally barred. In her initial brief, White argued that the trial court did not comply with Florida law when it denied her request for a special jury instruction. Doc. 6-4 at 287-90. She did not allege the trial court violated her federal constitutional rights. Therefore, White failed to fairly present the claim to the state court, which deprived the state court of a meaningful opportunity to review the claim. <u>See</u> <u>Baldwin v.</u> <u>Reese</u>, 541 U.S. 27, 29 (2004) (noting that to provide the state with the opportunity to rule on and correct alleged violations of a prisoner's federal rights, "the prisoner must fairly present his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim") (internal quotation marks omitted). Because any future attempt to exhaust this claim would be futile, it is procedurally defaulted. White has alleged neither cause and prejudice nor a miscarriage of justice to overcome her failure to exhaust. Accordingly, the claim for relief in Ground One is due to be denied because White failed to exhaust it.

Nevertheless, even if White fairly presented a federal claim to the state court, she still is not entitled to relief. In its appellate brief, the State addressed the claim on the merits, Doc. 6-4 at 312-18; therefore, the appellate court may have affirmed White's conviction based on the argument presented by the State. If the appellate court addressed the merits of the claim, the state court's adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, White is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, the claim is without merit. "State court jury instructions ordinarily comprise issues of state law and are not subject to federal habeas corpus review absent fundamental unfairness." Jones v. Kemp, 794 F.2d 1536, 1540 (11th Cir. 1986). To establish fundamental unfairness, the petitioner must demonstrate "the error 'so infected the entire trial that the resulting conviction violates due process.'" Jacobs v. Singletary,

952 F.2d 1282, 1290 (11th Cir. 1992) (quoting <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977)). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." <u>Henderson</u>, 431 U.S. at 155. In such cases, the burden of the petitioner is "especially heavy." <u>Id.</u>

Here, White requested the following instruction related to the felony reclassification of the offense:[4]

> A "weapon" is legally defined as an instrument of attack or defense in combat or a means used to defend against or defeat another.

Doc. 6-4 at 97. The trial court denied White's request, finding the standard jury instructions appropriately defined the term. Doc. 6-3 at 364. The jury was instructed as follows:

> If you find that CASIE LANEE WHITE committed Second Degree Murder and you also find beyond a reasonable doubt that during the commission of the crime she personally carried, displayed, used, threatened to use, or attempted to use a weapon, you should find her guilty of Second Degree Murder with a weapon.

---

[4] Florida Statutes section 775.087(1) provides that "whenever a person is charged with a felony . . . and during the commission of such felony the defendant carries, displays, uses, threatens to use, or attempts to use any weapon or firearm, . . . the felony for which the person is charged shall be reclassified . . . [i]n the case of a felony of the first degree, to a life felony."

> A "weapon" is legally defined to mean any object that could be used to cause death or inflict serious bodily harm.

Doc. 6-1 at 103. Florida law presumes standard jury instructions are correct, and they are preferred over special instructions. Stephens v. State, 787 So. 2d 747, 755 (Fla. 2001). White has not demonstrated that the omission of her requested special instruction rendered her trial fundamentally unfair or that her conviction violates due process. Based on the record, the Court finds White is not entitled to federal habeas relief on Ground One.

### B. Grounds Two and Eleven

In Grounds Two and Eleven, White contends the trial court abused its discretion by denying her motion for continuance. Petition at 7, 14. According to White, counsel filed a motion for continuance on February 2, 2015, stating that he had received the case only three weeks ago, and he needed to locate and depose witnesses. Doc. 6-4 at 401. The trial court denied the motion. Id. Counsel renewed the motion at jury selection, and the trial court again denied it. Petition at 7. White raised a substantially similar claim on direct appeal, Doc. 6-4 at 291-302; the State filed an answer brief, id. at 318-39; and the First DCA per curiam affirmed White's conviction without a written opinion, id. at 359.

15

Respondents argue that White did not properly exhaust her claim because counsel failed to articulate any federal constitutional basis for the claim when he moved for a continuance. Response at 9. According to Respondents, because White did not raise the federal nature of her claim before the trial court, the First DCA could not consider it as a federal claim on direct appeal. Id.

The record shows that counsel filed a written motion for continuance in the trial court, which asserted that "[b]ased on the status of discovery . . . the undersigned attorney cannot effectively represent Defendant at trial as it is currently set." Doc. 6-1 at 67. In support of her claim of trial court error on direct appeal, White further argued that the Sixth Amendment right to counsel comprises the right to prepared counsel, and counsel should be afforded a reasonable time to prepare for trial. Doc. 6-4 at 291. Such arguments alerted the state court to the federal nature of her claim, which was premised on the Sixth Amendment right to counsel. Accordingly, the Court finds White properly exhausted her claim.

In its appellate brief, the State addressed the claim on the merits, Doc. 6-4 at 318-39; therefore, the appellate court may have affirmed White's conviction based on the argument presented by the State. If the appellate

16

court addressed the merits of the claim, the state court's adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, White is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, the claim is without merit. The decision of whether to grant a motion for continuance is committed to the discretion of the trial court. Van Poyck v. Fla. Dep't of Corr., 290 F.3d 1318, 1326 (11th Cir. 2002). To establish that the denial of a continuance amounted to reversible error, "a defendant must show that the denial caused specific substantial prejudice." Id. (quotation marks omitted).

Here, White has not shown that the trial court's denial of a continuance resulted in prejudice. Counsel filed a motion for continuance on February 2, 2015, approximately one week before jury selection scheduled for February 9, 2015. Doc. 6-2 at 26-27. Counsel sought a continuance to obtain current

17

addresses for and to depose four State witnesses. Id. The prosecutor responded that he had been unable to obtain current addresses for the witnesses, and he therefore could not locate the witnesses. Id. at 28-30. Notably, none of these witnesses testified at trial.

Counsel renewed his motion for continuance on the day of jury selection, arguing that he needed to re-depose a State witness, Hendricks, who changed his testimony. Doc. 6-4 at 264-65. Hendricks initially gave a sworn statement that White said she hit the victim; however, during his deposition testimony, he did not remember that White made any statements. Id. at 265-66. When the prosecutor met with Hendricks before trial, Hendricks remembered that White made the statement. Id. The trial court denied the motion, but ordered the State to make Hendricks available to the defense before trial. Id. at 268. Ultimately, the State did not call Hendricks as a witness at trial. Doc. 6-2 at 319-25. Neither White nor defense counsel articulated any specific prejudice that would result from the State not calling the above witnesses. The Court finds the trial court's denial of a continuance did not cause specific substantial prejudice where the State could not locate and did not call the witnesses that counsel sought to depose. Accordingly, White is not entitled to federal habeas relief on Grounds Two and Eleven.

18

## C. Grounds Three and Nine

As Ground Three, White alleges counsel was ineffective when he failed to present a "reasonable hypothesis of innocence." Petition at 8. According to White, counsel should have presented evidence that someone else killed the victim because "it was highly unlikely that [White] was the perpetrator of the crime, and in fact, it was more reasonable to believe that someone else actually killed the victim after [White] left the residence." Doc. 6-4 at 381. In Ground Nine, White similarly argues that counsel was ineffective when he failed to investigate or present a defense of innocence. Petition at 13; Doc. 6-4 at 396-98.

White raised substantially similar claims as grounds one and seven of her Rule 3.850 Motion. Doc. 6-4 at 381-83, 396-98. In denying relief on ground one, the postconviction court stated in pertinent part:

> Defendant alleges counsel was ineffective for failing to present "a reasonable hypothesis of innocence [to the] jury." Specifically, Defendant avers she hit the victim three to four times with an unknown object, likely a vase, after the victim would not let her leave and swung at Defendant. Defendant maintains the victim was alive when she left and that it is more reasonable to believe someone else killed the victim after she left. To support this theory, Defendant cites the medical examiner's testimony that the victim was bludgeoned at least ten times, evidence that there was one small droplet of blood on

the vase, and that detectives saw no blood on Defendant's clothes despite a large amount of blood spatter on the wall. Defendant avers this was enough to have the vase excluded as the murder weapon. Defendant further suggests that she was 5'3, weighed only 140 pounds, and did not possess the strength necessary to sever the victim's neck from his spinal cord. Defendant maintains the police never conducted a DNA analysis of [] the victim's fingernails to determine whether he had been in an altercation with someone else that night.

Counsel indeed questioned witnesses to suggest, and argued in closing arguments, that it was possible another person came into the victim's house after Defendant left and killed him. Moreover, Defendant's own statement during her interview suggested she was afraid Rodney Horton ("Horton"), who was at the house with them earlier in the night wanted to rob the victim of his money and prescription medications and that Horton made the victim feel uncomfortable. Counsel's arguments were clear enough that the State attempted to dispel the implication during its closing argument before counsel had even made his argument.

Counsel also made sure to highlight the "conflicting" evidence that the room was so bloody and the murder weapon was so bloody that it created cast off, but no blood was found on Defendant's clothes, people did not see blood on the victim, and only a drop of blood was found on the item the State alleged to be the murder weapon. Counsel highlighted the fact that no DNA evidence tested from the crime matched Defendant. Moreover, contrary to Defendant['s] assertion that counsel did not argue her innocence based on the fact that the police never submitted the victim's fingernail

20

clippings for DNA analysis, this Court finds counsel adequately highlighted this issue.

As for Defendant's argument that she was physically unable to render the injuries to Defendant, this Court finds there to be conflicting evidence. During her interview, she stated she was 5'3 and weighed approximately 150 pounds. At the time of his death, the victim was only 5'2 and weighed only 140 pounds. Thus, Defendant would have been of similar stature to the victim. Moreover, the State presented evidence that Defendant was not in great health and had back issues. [] [T]he medical examiner did not testify that Defendant's neck was severed from his spinal cord, but that he suffered an atlanto-occipital dislocation where the muscles and ligaments holding the neck are injured. The same expert, moreover, did testify that he was not able to tell how much force would be required to cause each of the victim's injuries. [] [C]ounsel made sure to elicit testimony from this witness that he did not know what material the vase was made of or whether it would be strong enough to fracture a skull and not break. Counsel further elicited testimony and made argument regarding whether the vase was indeed strong enough to hit objects and not break or crack.

Accordingly, this Court finds counsel was not deficient for allegedly failing to present a theory of defense when he indeed highlighted this evidence for the jury. Despite these "conflicts" as trial counsel referred to them in his closing argument, this Court finds it was not enough to have the items excluded from the trial. This specific allegation is discussed in more detail [] in Ground Three. Moreover, as counsel presented these issues to the jury, this Court finds no reasonable probability the result of the proceeding would have been different if counsel had instead

21

> framed his arguments around Defendant's innocence rather than the State's failure to meet its burden of proving Defendant committed the crime beyond a reasonable doubt. Defendant is, therefore, not entitled to relief on this Ground.

Id. at 407-09 (record citations omitted). The postconviction court also denied relief on Ground Seven, explaining:

> Defendant claims counsel was ineffective for failing to investigate and present a viable defense, despite Defendant telling counsel that she was innocent. This Court finds these allegations to be the same as alleged in Ground One and adopts its analysis from above to deny this Ground.

Doc. 6-5 at 9. The First DCA per curiam affirmed the denials of relief without a written opinion. Id. at 249.

To the extent that the First DCA denied these claims on the merits,[5] the Court will address the claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light

---

[5] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

of the evidence presented in the state court proceedings. Therefore, White is not entitled to relief on the basis of these claims.

Nevertheless, even if the appellate court's adjudication of these claims is not entitled to deference, they are without merit because the record supports the postconviction court's conclusion. Counsel pursued a defense that focused on the deficiencies in the State's evidence and law enforcement's investigation. During opening statements, counsel asked the jury to pay attention to what the witnesses cannot testify to, as well as "gaps in the evidence[,] what was not said, what is not known, [and] what was not done during the course of this investigation." Doc. 6-2 at 255. Counsel pursued this defense throughout his cross-examination of State witnesses, specifically highlighting the gaps in law enforcement's investigation of physical evidence. Doc. 6-2 at 31-32, 37-38, 70, 97, 267-68, 273-74, 277-80, 307, 338-39, 348-49. During closing arguments, counsel asserted that the State had presented insufficient evidence that White acted with "ill will, hatred, spite, [and] evil intent." Doc. 6-3 at 436-39. He also identified weaknesses in the physical evidence, including the small amount of blood on the vase and the absence of blood on White's clothes. Id. at 450-63. Accordingly, counsel was not deficient

when he presented a defense that emphasized the evidentiary deficiencies identified by White.

Even if counsel performed deficiently, White has not shown any resulting prejudice. She has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as White claims he should have. Her ineffectiveness claim is without merit because she has shown neither deficient performance nor resulting prejudice. Therefore, White is not entitled to federal habeas relief on the claims in Grounds Three and Nine.

### D. Ground Four

Next, White asserts counsel was ineffective when he failed to move for immunity based on Stand Your Ground. Petition at 10. According to White, she and the victim argued on the evening of the murder. Doc. 6-4 at 384. White attempted to leave the house through a window, but the victim pulled her back inside. Id. The victim allegedly swung at White, so White used a glass vase to hit the victim. Id. White maintains the victim was alive when she left the house, and she only hit the victim in self-defense. Id.

White raised a similar claim as ground two of her Rule 3.850 Motion. Id. at 384-86. In denying relief, the postconviction court explained:

24

Defendant next asserts counsel acted deficiently in failing to file for immunity from the charge based on Florida's Stand Your Ground law. Defendant again suggests she tried to leave the apartment through a window, but the victim pulled her back in and swung at her, causing her to grab an object and swing back, hitting Defendant three or four times. Defendant suggests she grabbed the object out of fear and used it to defend herself. Defendant concludes that if counsel had filed such a pretrial motion to dismiss, the charges against her would have been dismissed before trial or at trial she could have presented the evidence and had the jury find her not guilty or guilty of a lesser charge.

Pursuant to sections 776.032(1), 776.012(1), and 776.013(3), Florida Statutes, a defendant may seek statutory immunity from prosecution based on the justified use of force in self-defense. A defendant bears the burden of establishing his or her entitlement to immunity by a preponderance of the evidence. Early v. State, 223 So. 3d 1023, 1024 (Fla. 1st DCA 2017). The trial court must weigh the credibility of the witnesses and evidence and make findings of fact on a substantial, competent basis. Mederos v. State, 102 So. 3d 7, 11 (Fla. 1st DCA 2012) (citing Peterson v. State, 983 So. 2d 27 (Fla. 1st DCA 2008)).

Counsel, however, cannot be held ineffective for failing to raise a meritless argument or motion. Campbell v. State, 139 So. 3d 490, 498 (Fla. 2d DCA 2014). If the facts contained within the record in conjunction with case law demonstrate a particular motion would not have been successful, then the claim of ineffective assistance of counsel for failing to file said motion must fail. State v. Freeman, 796 So. 2d 547, 578 (Fla. 2d DCA 2001).

25

Here, Defendant's own statements during her police interview would have rendered such a motion meritless. Initially, Defendant lied and claimed she was not at the victim's the night of his death. After the police confronted her and stated they had evidence she was in Jacksonville with the victim that night, Defendant then admitted she had an "altercation" [with] the victim that night and expressed that she was "defending herself." However, Defendant never expressed being in fear of her life, but rather discussed being angry and in a rage and repeatedly stat[ed] that she would not allow another person to put their hands on her and not fight back. Defendant stated at the time of the altercation she "obviously" thought the victim "needed his [butt] whooped." Importantly, Defendant's own assertions never indicated a threat to her life. Defendant never alleged the victim had any kind of weapon or caused any type of serious injury to her; rather, Defendant only state[d] that he pulled her back as she attempted to leave and that he attempted to swing at her but missed. Indeed, Defendant reported sustaining no serious injuries. While Defendant repeatedly says she remembered hitting him three or four times, she also stated that she probably did not stop hitting him until something "clicked in her head." Additionally, the evidence showed she hit him at least seven or ten times and with enough force to cause skull fractures, rib fractures, an atlanto-occipital dislocation, and eventually death.

Moreover, the State had evidence Defendant and the victim were arguing earlier in the day. The State further had a witness who saw Defendant after the incident and overheard her telling her father that she "hit him upside the head" and took his belongings. That same witness observed Defendant

> burning her flip flops the following day. Considering all the evidence the State had, particularly Defendant's own statements, this Court finds a Stand Your Ground motion to dismiss motion would have been denied. Accordingly, counsel cannot be deemed ineffective for failing to file such a motion, and Defendant is not entitled to relief on this ground.

Id. at 409; Doc. 6-5 at 1-2 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 6-5 at 249.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, White is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, White's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. Counsel

27

cannot be deficient when he fails to raise a meritless argument. See Pinkney v. Sec'y, DOC, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."). As such, White has failed to carry her burden of showing that her counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by counsel, White has not shown any resulting prejudice. She has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had filed a motion to dismiss based on Stand Your Ground. Her ineffectiveness claim is without merit because she has shown neither deficient performance nor resulting prejudice. Accordingly, White is not entitled to federal habeas relief on the claim in Ground Four.

### E. Ground Five

In Ground Five, White alleges counsel was ineffective when he failed to present exculpatory DNA evidence and suppress the murder weapon, a glass vase. Petition at 12. According to White, DNA tests on the vase produced inconclusive results, and the vase did not have any chips or cracks. Doc. 6-4 at 387. White contends that counsel should have moved to suppress the vase

because the evidence did not suggest it was the murder weapon and retained

a DNA expert to examine the vase. Id. at 388.

White raised a substantially similar claim as ground three of her Rule

3.850 Motion. Id. at 387-89. The postconviction court denied relief, stating in

pertinent part:

> Defendant avers counsel was ineffective for
> failing to present exculpatory DNA evidence and
> failing to suppress the murder weapon. Defendant
> states the DNA results on the murder weapon were
> inconclusive in that it did not contain enough DNA to
> determine to whom the DNA belonged. Defendant
> further notes the vase was not cracked or chipped
> despite the damage to the victim and the seven to ten
> blows [that] the State's experts opined the vase hit
> the victim. Defendant suggests that the vase should,
> thus, have been excluded, alleging it was prejudicial
> to the Defendant because evidence suggested it was
> not the murder weapon.
>
> "All relevant evidence is admissible, except as
> provided by law." § 90.402, Fla. Stat. Such evidence is
> inadmissible if "its probative value is substantially
> outweighed by the danger of unfair prejudice." §
> 90.403, Fla. Stat. "Most evidence that is admitted will
> be prejudicial or damaging to the part[y] against
> whom it is offered. The question under the statute is
> not prejudice but instead, unfair prejudice." State v.
> Williams, 992 So. 2d 330, 334 (Fla. 3d DCA 2008)
> (citations omitted) (emphasis added).
>
> As discussed in Ground One, counsel indeed
> elicited and highlighted the testimony that there was
> no evidence of Defendant's DNA on the vase and

regarding the improbability of the vase being able to cause the victim's injuries without breaking. Counsel did not, however, attempt to exclude the vase based on these arguments or the other arguments outlined in Ground One. However, this Court finds such a motion would have been meritless as the probative value of the vase was not substantially outweighed by prejudice.

Most importantly, during her police interview, Defendant repeatedly stated that she hit the victim with the vase. Moreover, the vase was found just outside the residence and had blood on it, of which the victim could not be included or excluded as the source. Additionally, the medical examiner stated that he could not say it was the murder weapon but could not exclude it as such either. Thus, this Court finds this argument for exclusion to be meritless and finds counsel consequently cannot be deemed deficient for failing to seek the exclusion.

In this Ground, Defendant further suggests counsel should have [had] an independent expert examine the vase for DNA, stating that if the DNA showed any relationship to Defendant, the State would have presented such. Defendant further suggests her constitutional rights were violated because the State had an obligation to include exculpatory evidence which showed someone else may have committed the crime.

Initially, this Court notes it is pure speculation to assert another expert would have been able to obtain enough DNA to determine whose DNA was on the vase when the analyst at Florida Department of Law Enforcement could not. Such speculation cannot warrant relief. See Maharaj v. State, 778 So. 2d 944, 951 (Fla. 2000) ("Postconviction relief cannot be

based on speculation or possibility."). Moreover, this Court finds no prejudice as counsel used the lack of DNA results tying Defendant to the crime to advance his arguments. This Court further does not find Defendant's constitutional rights were violated in any way. The State is not mandated to present exculpatory information to the jury unless failing to do so would be misleading. Here, however, the State indeed presented to the jury that there was no DNA found on the handle of the vase and that Defendant was excluded as the source of the blood found on the vase.

Additionally, as to both portions of this claim, this Court notes Defendant stated under oath that there were no other witnesses or evidence that she wished for counsel to present on her behalf. Where a defendant has agreed with counsel's trial strategy regarding witnesses, he cannot later claim ineffective assistance based on counsel's failure to call a witness known to him and counsel prior to trial. See Thomas v. State, 838 So. 2d 535, 541 (Fla. 2003) ("Therefore, Defendant agreed to this course of action, and may not now attempt to claim ineffective assistance based upon his own decision."); Russ v. State, 937 So. 2d 1199, 1201 (Fla. 1st DCA 2006) ("[W]here an appellant makes a clearly and wholly inconsistent affirmance which contradicts his later postconviction claim, such claim may be summarily denied."). Accordingly, Defendant is not entitled to relief on this Ground.

Doc. 6-5 at 3-5 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Id. at 249.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, White is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, White's ineffectiveness claim does not have merit because the record supports the postconviction court's conclusion. White admitted striking the victim with the vase. Doc. 6-3 at 226, 228, 230, 232. While a law enforcement analyst did not obtain any DNA from the vase's handle, swabs from the vase indicated the presence of blood. Id. at 300-01. Considering such evidence, the trial court would not have granted a motion to suppress the vase because it constituted relevant evidence and did not unfairly prejudice the defense. Counsel cannot be deficient for failing to raise a meritless argument. See Pinkney, 876 F.3d at 1297. Moreover, White's

32

claim that an independent DNA expert would have obtained different results is entirely speculative. Speculation cannot form the basis of an ineffective assistance of counsel claim. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). As such, White has failed to carry her burden of showing that her counsel's representation fell outside that range of reasonably professional assistance.

Assuming arguendo counsel performed deficiently, White has not demonstrated that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as White claims he should have. Her ineffectiveness claim does not have merit because she has shown neither deficient performance nor resulting prejudice. Accordingly, White is not entitled to federal habeas relief on the claim in Ground Five.

## F. Ground Six

As Ground Six, White asserts counsel was ineffective when he failed to subpoena DNA tests on White's clothes and the victim's fingernail clippings. Petition at 12. According to White, the State proposed that White struck the victim with such force that she severed his spinal cord. Doc. 6-4 at 389. White argues that if she had struck the victim in such a manner, her clothes would

have blood on them. Id. She further maintains that the victim scratched her during the altercation, and DNA tests of the victim's fingernail clippings would have revealed her DNA. Id. at 390. White states that the victim's fingernail clippings may also have contained DNA from the individual who killed the victim. Id.

White raised a similar claim as ground four of her Rule 3.850 Motion. Id. at 389-90. In denying relief, the postconviction court stated in pertinent part:

> Defendant maintains counsel was deficient in failing to subpoena DNA testing of Defendant's clothing and the victim's fingernail scrapings. Defendant suggests there was no blood on her clothing despite the blood splatter of the victim's injuries. As for the victim's fingernail scrapings, Defendant states she told detectives in an interview that the victim scratched her during the altercation[,] and she was only protecting herself. Defendant suggests that while the scratches had healed by the time of her interview, this would have supported her theory of self-defense. Defendant also states that the results could have shown DNA evidence of the person who showed up after Defendant left, whom she alleges hit the victim an additional seven times and severed his head from his spinal cord using another weapon which would have contained the victim's blood and brain matter.
>
> During the police interview, Defendant admitted to having the victim's blood on her when she returned to her father's house. Thus, this Court

34

finds counsel cannot be deficient for failing to have the victim's clothing tested, which could have created more evidence for the State. Instead, counsel highlighted the fact that the clothing was collected, but not tested and that witnesses alleged to have seen no blood on the Defendant.

As for the victim's fingernail scrapings, Defendant did tell the detectives in her police interview that the victim scratched her. While Defendant asserts evidence that her DNA was under the victim's fingernails would support her theory of self-defense to show he engaged in the physical altercation with her, the evidence would have been used by the State to further prove that she was the individual who murdered the victim. Instead of creating this evidence, counsel again used the State's failure to test the clippings to his advantage and argued lack of police work and argued they did not test it because it would have supported her theory of self-defense. It is again mere speculation to assert that the fingernail clippings could have had another person's DNA on them[,] and such speculation and possibility cannot warrant relief. See Maharaj, 778 So. 2d at 951. Accordingly, this Court finds counsel did not act deficiently in regard to the DNA on Defendant's clothes or the victim's fingernail clippings. This Court, therefore, denies Ground Four.

Doc. 6-5 at 5-6 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Id. at 249.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record

and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, White is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, White's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. Counsel could have reasonably concluded that the proposed DNA tests would not aid the defense or result in the evidence proposed by White. White suggests that DNA tests would reveal no blood on her clothes. However, during her interview with law enforcement, White stated she had the victim's blood on her and her shoes. Doc. 6-3 at 233, 235, 248-49. Similarly, she contends DNA tests of the fingernail clippings would have supported her self-defense claim. However, she readily admitted during the interview that she sustained scratches on her hand, a bruise on her arm, and a scratch on the back of her leg. Id. at 248. In contrast, the victim died from a loss of brain function caused by blunt force trauma. Id. at 329. The medical examiner estimated the

36

victim was hit more than ten times on the head. Id. at 327. Given such evidence, DNA tests of the fingernail clippings likely would not have aided White's claim of self-defense. Accordingly, White is not entitled to federal habeas relief on Ground Six.

### G. Ground Seven

White contends counsel was ineffective when he failed to have a mental health expert examine her. Petition at 12. According to White, she previously had an abusive relationship, and the victim's violence "triggered [White] to defend herself." Doc. 6-4 at 391. White states that a mental health expert "could possibly have proven" that she suffers from Post Traumatic Stress Disorder (PTSD) or Battered Woman's Syndrome. Id. at 392.

White raised a substantially similar claim as ground five of her Rule 3.850 Motion. Id. at 387-89. The postconviction court denied relief, explaining:

> Defendant contends counsel was ineffective for failing to have Defendant evaluated by a mental health professional and present that expert as a witness. Defendant states she was in an abusive relationship with her children's father from the age of seventeen to twenty-four and that the victim's abuse triggered Defendant to defend herself. Defendant states the expert could have shown that Defendant "may suffer from PTSD or Battered Woman's

Syndrome." Defendant states this evidence would have resulted in a different outcome at trial.

This Court finds Defendant is again basing allegations off mere speculation. She does not assert that she indeed suffers from PTSD or Battered Woman's Syndrome, just that if she were evaluated, the evaluation may show that she did. However, even assuming counsel could have obtained an expert to testify that Defendant had such a condition, this Court finds no reasonable probability that the result of the proceeding would have been different. Initially, in Defendant's police interview, she never expressed she was scared for her life, only that she was not going to allow someone to hit her again because of her previous abusive relationship. This Court adopts its analysis from Ground Two to again reiterate the difficulties Defendant faced regarding a theory of self-defense. Additionally, despite counsel's alleged failure in this regard, during trial, Defendant affirmed to the trial judge that she was satisfied with counsel's representation up to that point. Defendant is, therefore, not entitled to relief on this Ground.

Doc. 6-5 at 6-7 (record citations omitted) (emphasis in original). The First

DCA per curiam affirmed the denial of relief without a written opinion. Id. at

249.

To the extent that the First DCA denied this claim on the merits, the

Court will address the claim in accordance with the deferential standard for

federal court review of state court adjudications. After a review of the record

and the applicable law, the Court concludes that the state court's

38

adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, White is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, the claim does not have merit. White does not specify the substance of the proposed expert's testimony, and she presumes the expert would have testified favorably to the defense. See Sullivan v. DeLoach, 459 F.3d 1097, 1109 (11th Cir. 2006) (noting that where a petitioner alleges ineffective assistance of counsel for failure to call a witness, the "prejudice burden is heavy . . . because often allegations of what a witness would have testified to are largely speculative.") (quotation marks and citation omitted); Finch v. Sec'y, Dep't of Corr., 643 F. App'x 848, 852 (11th Cir. 2016)[6] (finding that ineffective assistance of counsel claim for failure to call an expert witness was speculative and conclusory where petitioner

_____

[6] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

provided no evidence that he had contacted an expert and failed to allege an expert had reviewed the evidence in the case). Speculation is insufficient to support an ineffective assistance of counsel claim. See Tejada, 941 F.2d at 1559. Therefore, White has failed to carry her burden of showing that her counsel's representation fell outside that range of reasonably professional assistance.

Even assuming counsel performed deficiently, White has not shown any resulting prejudice. She has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had retained an expert witness. Her ineffectiveness claim is without merit because she has shown neither deficient performance nor resulting prejudice. Therefore, White is not entitled to federal habeas relief on Ground Seven.

### H. Ground Eight

Next, White alleges that counsel was ineffective when he failed to adequately cross-examine Andre Davis. Petition at 13. She asserts that on direct examination, the prosecutor elicited from Davis a description of White as "sweating, out of breath and panicky." Doc. 6-4 at 393. According to White, counsel should have cross-examined Davis about the description or objected to his testimony as misleading because White consumed alcohol and drugs

40

which could have caused that reaction. <u>Id.</u> White argues that since counsel did not challenge Davis's testimony, it "led the jury to believe that [Davis] was qualified to make such a determination as to [White's] state of mind." <u>Id.</u>

White raised this claim as ground six of her Rule 3.850 Motion. <u>Id.</u> at 392-95. The postconviction court denied relief, finding:

> Defendant avers counsel acted deficient[ly] by failing to adequately cross[-]examine and discredit State witness, Andre Davis ("Davis"). Each specific subargument will be addressed below.
>
> First, Defendant states counsel should have objected to the State's questioning of Davis regarding Defendant's demeanor as "sweating, out of breath and panicky" because Defendant was drinking and on drugs that day which could have caused such a demeanor. Defendant further avers Davis was not qualified to make a determination regarding Defendant's state of mind. As stated above, relevant evidence is admissible. Davis gave no expert opinion on Defendant's state of mind, but rather only testified to his observations and did not attempt to opine why Defendant appeared in that manner. This Court finds this testimony to be entirely proper and that counsel, thus, cannot be deficient for failing to object. <u>See Schoenwetter v. State</u>, 46 So. 3d 535, 546 (Fla. 2010 ("Counsel cannot be deemed ineffective for failing to make a meritless objection.") (citation omitted).
>
> Secondly, Defendant states counsel should have cross[-]examined Davis regarding the time he got the call from Defendant. Defendant avers counsel should have used the testimony of James Hendricks ("Hendricks") that White arrived at Mr. Bessent's

home around dusk to dispute Davis's answer that he got the call around midnight. Defendant suggests Davis did not then see Defendant until a few hours after. Initially, this Court finds it would be improper to use another witnesses' testimony to impeach Davis. Moreover, Hendricks did not testify at trial after his testimony was proffered to the trial judge. Additionally, this Court certainly finds no reasonable probability such testimony would have rendered a different result at trial considering the evidence present at trial as already outlined throughout this order.

Third, Defendant avers counsel should have elicited testimony from Davis regarding why he was at the house, as Davis believed he was there to sell drugs to Defendant. Defendant avers this is proper impeachment evidence due to the law that an attorney may impeach a witness with prior criminal convictions.

This Court finds such testimony would not be proof of a prior criminal conviction allowed as impeachment evidence under section 90.610, Florida Statutes. However, this Court notes that counsel indeed elicited testimony that Davis sold drugs to people at the residence after Defendant left. Moreover, the State wanted to then elicit testimony that Defendant called Davis to sell drugs to her, but the trial court found such testimony to be inadmissible. Accordingly, counsel cannot be deemed ineffective for failing to elicit such testimony.

Additionally, in finding no prejudice for counsel's failure to impeach Davis in these ways, this Court notes counsel did impeach Davis in other, proper manners. Not only did counsel elicit testimony that Davis sold drugs to people at Defendant's

42

father's house that night, Davis further testified that he has five felony convictions. Counsel further elicited testimony that while police attempted to contact Davis, he did not return the contact until after contacting a criminal defense attorney and only spoke to the State after being granted immunity for anything said during his statement. In closing arguments, counsel highlighted Davis's credibility issues to the jury. In light of the above, Defendant is not entitled to relief on this Ground.

Doc. 6-5 at 7-9 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Id. at 249.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, White is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, the claim does not have merit. Davis did not give improper opinion testimony; rather, he merely described White's demeanor

based on his personal observation. Doc. 6-2 at 328-29; <u>see</u> Fla. Stat. § 90.701;
<u>Bush v. State</u>, 809 So. 2d 107, 119-20 (Fla. 4th DCA 2002) ("A lay witness
may describe a person's physical appearance using opinions that do not
require special skill, so long as the opinions are based upon observations of
the witness."). Therefore, counsel did not perform deficiently when he failed
to make an objection that the trial court would overrule. <u>See</u> <u>Pinkney</u>, 876
F.3d at 1297.

As to White's remaining arguments, even assuming counsel performed
deficiently, she has not shown resulting prejudice. Counsel challenged Davis's
credibility during cross-examination. Davis admitted that he sold drugs after
he arrived at the house. Doc. 6-2 at 333. Davis testified that he immediately
contacted a criminal defense attorney after a detective investigating the case
left a business card at his mother's house, and he ultimately received
immunity from the State for his statement to law enforcement. <u>Id.</u> Further,
the jury heard on direct examination that Davis had five felony convictions.
<u>Id.</u> at 327. Considering Davis's testimony and the evidence presented at trial,
the Court finds White has not shown that a reasonable probability exists that
the outcome of the case would have been different if counsel had impeached
Davis in the proposed manner. Her ineffectiveness claim is without merit

44

because she has shown neither deficient performance nor resulting prejudice. Accordingly, White is not entitled to federal habeas relief on Ground Nine.

## I. Ground Ten

As Ground Ten, White alleges counsel was ineffective when he failed to have her testify at trial. Petition at 13. According to White, she did not make a voluntary or intelligent decision not to testify because she relied on counsel's advice not to testify. Doc. 6-4 at 399. White contends no reasonable attorney would have advised her in such a manner. Id.

White raised a similar claim as ground eight of her Rule 3.850 Motion. Id. at 398-400. In denying relief, the postconviction court stated in pertinent part:

> Defendant alleges counsel was ineffective for failing to have Defendant testify on her own behalf. Defendant states that her decision not to testify was not knowing or intelligently made because she was relying on counsel's advice and no reasonable attorney would have discouraged Defendant from testifying.

> The Florida Supreme Court has outlined an analysis for such claims. Lott v. State, 931 So. 2d 807, 819-20 (Fla. 2006). The first inquiry is to determine whether the defendant voluntarily agreed with counsel's advice not to take the stand. Id. at 819. If that is established, then the court must ask whether counsel's advice to defendant "even if voluntarily followed, was nevertheless deficient because no

45

reasonable attorney would have discouraged [defendant] from testifying." Id.

Here, the trial judge conducted a colloquy with Defendant in which she indicated [that] she had discussed the decision with counsel but understood the ultimate decision of whether to testify was her own, and consequently made the decision not to testify. Thus, this Court finds Defendant voluntarily agreed with counsel's recommendation not to take the stand.

Assuming counsel advised Defendant not to testify, this Court finds such advice to be sound and reasonable advice. Defendant would have been impeached on her two prior felony convictions. Moreover, despite Defendant's current allegation that "not once has her story changed," this is refuted by the record and, if she testified, the State would be able to highlight these inconsistencies. As stated previously, Defendant initially lied to police and denied being with the victim on the night of his death until the police told her they had proof that she was with him that night. However, Defendant's purported testimony is very similar to that which she described in her interview once she told the police about the altercation. Thus, that information was presented to the jury.

The main difference in her allegations is that Defendant now states the victim was alive when she left. Moreover, the medical examiner testified the victim would not have likely passed away immediately.

This Court again reiterates Defendant's statements in her police interview, as well as her purported testimony, do not indicate she was fearful

46

for her life when she hit the victim. This Court also again adopts its analysis from above regarding the difficulties Defendant would face in regard to a theory of self-defense. Accordingly, this Court finds this situation is not one in which no reasonable attorney would have discouraged Defendant from testifying. Defendant is, therefore, not entitled to relief on this Ground.

Doc. 6-5 at 9-11 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Id. at 249.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, White is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, White's claim is without merit because the record supports the postconviction court's conclusion. If White had testified at trial, the jury would have learned about her two prior felony convictions. Doc. 6-3

at 357. The State also would have cross-examined White about her inconsistent statements during the interview with law enforcement. Id. at 144-49, 173-77. On this record, White cannot establish that no competent counsel would have advised her not to testify. See Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) ("And because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable a petitioner must establish that no competent counsel would have taken the action that his counsel did take."). White has failed to do so, and as such failed to carry her burden of showing that her counsel's representation fell outside that range of reasonably professional assistance.

Assuming arguendo counsel performed deficiently, White has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had advised her to testify. Her ineffectiveness claim is without merit because she has shown neither deficient performance nor resulting prejudice. Accordingly, White is not entitled to federal habeas relief on the claim in Ground Ten.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If White seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should

issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, White "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If White appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of November, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

50

Jax-9 10/13
C:    Casie Lanee White #J54754
      Counsel of record